**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

JACOB HORN,

        Plaintiff,

vs.

AIRWAY SERVICES, INC., and
SIEMENS GAMESA RENEWABLE
ENERGY, INC. f/k/a SIEMENS WIND
POWER, INC.,

        Defendants.

No. 18-CV-3053 CJW-MAR

**MEMORANDUM OPINION
AND ORDER**

———————————

**TABLE OF CONTENTS**

I.      SUMMARY JUDGMENT STANDARD ................................................ 1

II.     PROCEDURAL HISTORY ................................................................ 4

III.    FACTUAL BACKGROUND ............................................................. 4

IV.   APPLICABLE LAW ...................................................................... 14

V.    ANALYSIS ................................................................................... 16

      A.     Wrongful Termination – Jury Service .......................................... 16

            1.    Iowa Code Section 607A.45 ............................................. 16

            2.    Causation .................................................................. 19

      B.     Wrongful Termination – Safety Complaints ................................. 20

            1.    SGRE ...................................................................... 20

a.      Adverse Employment Action ....................................20

b.      Relevant Decision-Makers .....................................22

c.      Causation ..........................................................24

        i.      Temporal Proximity ....................................25

        ii.      Similarly Situated Individuals .........................26

        iii.      Antagonism toward Protected Activity ...............29

        iv.      Presence of Intervening Events ........................34

d.      Legitimate Business Reason/Pretext...........................39

    2.      Airway.........................................................43

a.      Direct Causation .................................................43

b.      Indirect Liability ................................................45

        i.      Joint Liability .............................................46

        ii.      Vicarious Liability .......................................47

C.      Punitive Damages ..................................................49

VI.     CONCLUSION .............................................................50

This matter is before the Court on defendants' motions for summary judgment. (Docs. 30 & 31). On October 2, 2019, defendants Siemens Gamesa Renewable Energy, Inc. ("SGRE") (Doc. 30), and Airway Services, Inc. ("Airway") (Doc. 31) both moved for summary judgment. Plaintiff moved for additional time to respond to defendants' motions, and the Court granted plaintiff's request in part. (Docs. 38 & 40). Plaintiff filed timely responses to defendants' motions for summary judgment, responses to defendants' statements of undisputed material facts, plaintiff's own statement of additional facts, and an appendix. (Docs. 41-44). Defendants filed timely responses to plaintiff's statement of additional facts and replies to plaintiff's resistances. (Docs. 51, 52, 54). On December 12, 2019, the Court held oral argument on defendants' motions for summary judgment. (Doc. 56). The Court now considers this matter fully submitted. For the following reasons, defendants' motions for summary judgment are **granted**.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." *Id.* at 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).

A fact is "material" if it "might affect the outcome of the suit under the governing law . . .." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953

F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. A mere scintilla of evidence in support of the plaintiff's claims is not enough to avoid summary judgment. *Rohr v. Reliance Bank*, 826 F.3d 1046, 1052 (8th Cir. 2016) (citing *Anderson*, 477 U.S. at 252). In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" such that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). "The movant is not required by the rules to support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on

a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them" (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Although the Court must draw all inferences in favor of the nonmoving party, the Court cannot rely on "mere speculation, conjecture, or fantasy" to deny a motion for summary judgment. *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (internal quotation marks and citations omitted). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). "Rather, the court's function is to determine whether a dispute about a material fact is genuine . . . ." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996) (citation omitted).

In determining the presence or absence of a genuine factual dispute, a party may object that the material cited "cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "Hearsay evidence cannot be used to defeat a summary judgment motion." *Edmonds v. Minneapolis Pub. Sch. Special Sch. Dist. 1*, 368 F. Supp. 3d 1329, 1338 (D. Minn. 2018) (citing *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005)). "When an objection is made to evidence relied on at summary judgment, 'the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated.'" *Progressive Cas. Ins. Co. v. F.D.I.C.*, 80 F. Supp. 3d 923, 934 (N.D. Iowa 2015) (quoting *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012)). The Eighth Circuit Court of Appeals has found statements inadmissible at the summary judgment stage when the party relying on the statements provides only secondhand testimony instead of the deposition or affidavit of the declarant. *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019). After resolving any evidentiary issues, if "the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

## II.    PROCEDURAL HISTORY

On July 19, 2018, plaintiff filed suit against defendants in the Iowa District Court for Webster County. (Doc. 4). Plaintiff alleges one count of wrongful termination,[1] and a second count for punitive damages. Plaintiff asserts that his termination was wrongful because it was in retaliation for plaintiff reporting safety complaints to defendants and/or in retaliation for plaintiff serving jury duty in February 2017. SGRE removed the case to this Court on grounds that the Court has diversity jurisdiction under Title 28, United States Code, Section 1332. (Doc. 1). Airway consented to the removal. (Doc. 16). Defendants filed the instant motions for summary judgment, which plaintiff resists.

## III.    FACTUAL BACKGROUND

The following background facts are undisputed unless otherwise indicated. The Court will discuss additional facts below as they become relevant to the Court's analysis.

SGRE manufactures wind turbines and provides on-site maintenance and repair for its customers. One of SGRE's customers is MidAmerican Energy Company ("MEC"). SGRE provides on-site service for wind turbines through its own technicians as well as technicians employed by SGRE's contractors. At all times relevant to this dispute, Airway was one such contractor providing technicians to SGRE at eleven MEC-owned sites.

The relationship between SGRE and Airway was governed by the Master Services Agreement. (Doc. 30-1, at 1-2). Under the Master Services Agreement, Airway's

---

[1] Iowa Courts sometimes refer to wrongful discharge claims as "retaliatory discharge" claims. *See, e.g.*, *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 301 (Iowa 1998).

technicians were to perform maintenance work under SGRE's direction. SGRE had the authority to remove Airway's technicians from SGRE's sites and approve any additional or replacement personnel. (Doc. 43-6, at 1-3). SGRE also had authority to review Airway's employees and require Airway to remove any technician who was "impeding the orderly process of the [w]ork or otherwise causing interference or delays, or is failing to comply with the requirements of the [c]ontract [d]ocuments[.]" (*Id.*, at 3).

At all relevant times Curtis Simmons ("Simmons") was the District Manager for SGRE's sites in Iowa. Alexander Freund ("Freund") was the site manager at the Lundgren Wind Farm in Otho, Iowa ("Lundgren site"). Freund managed the day to day maintenance operations at the Lundgren site. SGRE also employed Loma Roggenkamp ("Roggenkamp"), an Environmental Health and Safety Specialist, and Marissa Munoz ("Munoz"), a Human Resources Consultant. (Doc. 30-1, at 1-4).

John Stevens ("Stevens") was the Operations Manager for Airway and managed the SGRE account. Stevens reported to Jonathan Click ("Click"), the Director of Operations for Airway. At all relevant times Dustin Jenson ("Jenson") was Airway's Director of Safety and Training. On or about June 14, 2016, Airway hired plaintiff and sent him to Texas to be trained and certified as a level three wind turbine technician. (*Id.*, at 3-4). Sometime thereafter plaintiff began working for Airway at the Lundgren site.

On August 12, 2016, plaintiff sent a text message to Stevens expressing concerns that Freund was telling technicians "to get in and work on cabinets when not trained." (Doc. 36-1, at 68-69). On September 1, 2016, plaintiff exchanged text messages with Stevens criticizing Freund's management. (*Id.*, at 70-72). These texts do not raise safety complaints, but plaintiff stated that Freund "doesn't take care of his techs" and that plaintiff did not trust Freund after his handling of a sexual harassment situation. (*Id.*).

In September 2016, Freund and plaintiff discussed plaintiff working directly for SGRE. Freund asked plaintiff if anything in his background might come up as a red flag during SGRE's background check. Plaintiff provided Freund a hand-written criminal history which included two convictions for domestic assault and one conviction for assault causing bodily injury. (Doc. 30-6, at 116). Freund told plaintiff that plaintiff's criminal history "might cause a red flag to come up," and that Freund would hate for plaintiff's criminal history to alter his job with Airway. (*Id.*, at 67). Plaintiff told Freund to "forget about" plaintiff applying with SGRE because he "didn't want any hiccups." (*Id.*). When asked what he meant by "any hiccups" plaintiff testified "I just didn't want to lose my job or anything, I mean, worst-case scenario." (*Id.*). Plaintiff later stated that he did not believe his criminal history could cause him to lose his job. (*Id.*).

At some point in the fall of 2016, Freund told plaintiff that he was going to recommend to Airway that plaintiff travel for level four/five technician training in Florida. SGRE pays for the level four/five training for Airway employees working at SGRE sites. Level four/five training, including the required travel, is expensive. (Doc. 30-1, at 12).

Plaintiff complained to Freund at least twice in November 2016 because Freund instructed plaintiff to inspect anchor points inside the turbines that plaintiff was not trained to inspect. (Doc. 30-6, at 68-69).

On January 15, 2017, plaintiff and another technician, Derrick Meadows ("Meadows") called a "stop work" due to an ice storm. (Doc. 30-6, at 62, 120). Plaintiff and Meadows had concerns about road conditions affecting their drive to another site in Pomeroy, Iowa, as well as ice on the turbine blades. (*Id.*). Plaintiff alleges that Freund called plaintiff and Meadows "pussies" and told them to "suck it up," and used other insults. (*Id.*).

On January 17, 2017,[2] Roggenkamp provided resilience training to all technicians at the Lundgren site. Plaintiff stated some safety concerns to Roggenkamp in front of Freund, and plaintiff and other technicians stated additional safety concerns after Freund left. Plaintiff claims he was concerned about raising safety issues in front of Freund because plaintiff had "heard of witch hunts at other sites where management takes it upon themselves to fire or terminate employees who might expose safety hazards." (Doc. 42-3, at 15). Plaintiff asked the group what the common denominator was in the issues at the Lundgren site, to which Freund responded, "I'd like to think it's not me." (*Id.*, at 15-16). Roggenkamp's notes do not reflect any safety complaints from that meeting, and plaintiff never made any further complaints to Roggenkamp.

At some point in January 2017, plaintiff complained that Freund required level three technicians to perform work they were not trained to do. (Doc. 43-3, at 4). On or about January 20, 2017, plaintiff was "directed to do work he was not trained for," but the record does not establish whether plaintiff raised a complaint on that date. (Doc. 43-3, at 7). In mid-January, plaintiff raised concerns with Freund about replacing an inline pump without proper training, and about pumping coolant from a turbine basement while the turbine was running. (Docs. 30-6, at 15, 75-76; 43-3, at 4, 7, 9). Plaintiff also alleges that in mid-January 2017 Freund would "criticize [p]laintiff if he asked for gloves, batteries for flashlights, and feet warming packs or tinted safety glasses." (Doc. 43-3, at 9).

Plaintiff exchanged emails with Jenson about safety issues on February 2 and 6, 2017. Jenson sent plaintiff's complaints to Roggenkamp, but not to Freund or Simmons. There is no evidence in the record that Roggenkamp ever provided plaintiff's emailed

---

[2] The record is somewhat unclear whether this training occurred on January 17 or January 18, 2017. For simplicity the Court will refer to the training as having occurred on January 17, 2017, but regardless, the one-day difference is not material to any of the Court's findings in this Order.

complaints to Freund or Simmons. Plaintiff made no further safety complaints to Airway after February 6, 2017. (Doc. 30-1, at 9-10).

On February 7, 2017, Munoz visited the Lundgren site to check on safety issues, specifically an anonymous report that Freund was tipping technicians off in advance of their drug tests. Plaintiff believes that Munoz spoke to every technician at the Lundgren site, and Munoz's notes reflect that she talked to five technicians in addition to plaintiff. There is no evidence that Munoz reported any of the specific safety complaints made by plaintiff or the other technicians to Freund. Freund was aware that Munoz was meeting with technicians in the conference room but did not know the specifics of any of the complaints. Simmons did not know who made the report about Freund tipping off the technicians but understood that Munoz was unable to verify the claim. There is no dispute that Simmons had no knowledge of any safety complaints made by plaintiff. (*Id.*, at 10-11).

On February 15, 2017, Freund sent an email to Stevens and Click confirming that plaintiff and another contractor, Tim Thomas ("Thomas") were scheduled for level 4/5 training from April 6 through April 21 or 22, 2017. (*Id.*, at 13).

During the time relevant to this case, Freund and Simmons were aware that MEC was going to change how technicians accessed its wind farms, which would include more stringent backgrounds checks. The background checks would determine which technicians would receive badges to access various secure areas at the MEC sites. In Simmons' experience, MEC would not provide a security badge to persons with serious misdemeanor convictions. Stevens was aware of the changes to MEC's security standards but had limited knowledge about the specifics of the changes or when they would be implemented. Freund also did not have an extensive or in-depth understanding of the changes to MEC's background check standards but knew MEC would implement them in the spring of 2017. (*Id.*, at 13-14).

On February 21, 2017, Freund received an email signed by "M. Meier" from the email address m.meier@iowa.gov. The email stated, in relevant part, "[o]ne of your contractors was 'most wanted' recently," and included a link to the Webster County Crime Stoppers website. (Doc. 30-7, at 96-97). Freund did not follow the link but accessed the Crime Stoppers website and saw a wanted poster listing the charges against plaintiff as "Assault, False Imprisonment." (Doc. 30-7, at 100). Freund forwarded the email to Stevens, Simmons, and Munoz.

Plaintiff asserts that this email was "a fake to look like it came from [plaintiff]'s [p]robation [o]fficer." (Doc. 41-2, at 5). SGRE and Airway both dispute plaintiff's factual assertion that the email was a "fake." (Docs. 51, at 7 n.2; 52, at 8). Plaintiff cites his own deposition testimony and Stevens' deposition testimony in support of his assertion. (Docs. 42, at 14-16; 42-2, at 2-9). Stevens testified that plaintiff's probation officer, Maurice "Maury" Meier ("Meier"), told Stevens that he did not send the email. Plaintiff testified that Meier and Meier's manager Katie Scheulke ("Scheulke") told plaintiff that Meier did not send the email and that m.meier@iowa.gov was not Meier's email address. These statements are offered for their truth, and thus constitute hearsay under Federal Rule of Evidence 801. Plaintiff has not articulated any exception that would make Meier's or Scheulke's out-of-court statements admissible, and thus the statements are inadmissible under Rule 802. Plaintiff has also offered no evidence to meet his burden to show that he can present Meier's or Scheulke's out-of-court statements in an admissible form at trial. Thus, the Court finds that the email from m.meier@iowa.gov to Freund was not a "fake."[3]

---

[3] Plaintiff also testified in his deposition that he believed that Freund sent the email from the m.meier@iowa.gov account to himself. (Doc. 42-2, at 7-9). Plaintiff's opinion is based solely on the fact that the email was sent to Freund's email address and the fact that SGRE refers to Airway's employees as contractors. (*Id.*). Plaintiff's belief about who sent the email is irrelevant because he has not established by admissible evidence that it was not from Meier. Also,

On February 27, 2017, plaintiff informed Freund via text message that he had jury duty the following day, but he did not anticipate being selected for the jury. Freund responded that SGRE divides jury service into half days, so if plaintiff was not selected he should report to work after being dismissed. On February 28, 2017, plaintiff sent an email to Stevens stating that he had jury duty. (Doc. 43-2, at 9).

In fact, plaintiff appeared for jury duty on February 28, 2017, but was not selected to serve on the jury. Plaintiff did not report to work after the end of jury duty on February 28, 2017. Plaintiff did not have jury duty on March 1, 2017, but Plaintiff told Freund that he still had jury duty, and plaintiff did not report for work that day. On March 1, 2017, Plaintiff appeared in person in the Iowa District Court for Webster County to answer to two serious misdemeanor charges (Assault Causing Bodily Injury or Mental Illness and False Imprisonment) and an aggravated misdemeanor (Probation Violation/Revocation). (Doc. 30-1, at 15-16).

Also on March 1, 2017, Freund sent the following email to Stevens with copies to Simmons, Munoz, Click, and Chase Hord, of Airway:

> Hello,
>
> I just received a call from Karin with the Second District Court regarding Jacob Horn to verify his employment. I did not inquire about Jacob's status other than asking Karin who Airway should contact for more information. She advised me that Maury Meier (his parole officer) should be contacted (via Second District Court) for more information about Jacob's current status and potential outcome pending his hearings.
>
> Jacob did not work yesterday or today for what he said was jury duty.

(Doc. 30-7, at 95-96). Freund testified in his deposition about the call described in his email. (Doc. 30-6, at 18). Plaintiff offers the affidavit of Tina Ganzeveld, the Webster

---

plaintiff's conclusion is precisely the type of "mere speculation, conjecture, or fantasy" on which the Court cannot rely in ruling on a summary judgment. *Moody*, 23 F.3d at 1412. The Court finds that Freund did not send the February 22, 2017 email to himself.

County Clerk of Court, who states that in February and March 2017, there was no Karen[4] employed by the clerk's office. (Doc. 43-6, at 4). The affidavit also states that the clerk's office does not give out criminal history information or comment on the eligibility of a potential juror. (*Id.*).

Plaintiff argued at the hearing that the March 1, 2017, phone call never took place and that Freund made up the call as pretext to justify plaintiff's termination. Although the affidavit from the Clerk of Court indicates that the call did not actually come from the clerk's office, without resorting to speculation the Court cannot find that Freund did not receive the described call. Plaintiff has offered no affirmative evidence that Freund did not receive a call about plaintiff on March 1, 2017, and plaintiff "may not stave off summary judgment armed with only the hope that the jury might disbelieve [Freund's] testimony." *See Smith*, 926 F.3d at 484 (citation and internal quotation marks omitted). Also, even if Freund did not receive a telephone call, his suspicion that plaintiff lied about his whereabouts when claimed to be at jury duty was factually accurate.

Simmons responded to Freund's email, asking "[s]hould we remove Jacob from the site until this matter is cleared up? He should provide his proof of jury duty to you or Airway Services in my opinion?" (Doc. 30-7, at 95). Freund responded:

> Well, according to the lady that called me he isn't eligible for jury duty due to his pending charges. She gave me the impression that he is going to be doing some jail time. Jail time plus the fact that he is intentionally not telling the truth about what he is doing will equal me requesting he be removed from site.

(*Id.*). Simmons responded "I have watched his actions and emotions while I am on site. I think we can and should expect better from our staff or from our contract employees." (*Id.*).

---

[4] The Court notes that Freund's email spelled the name "Karin," while the Ganzeveld affidavit spells the name "Karen." The Court finds the different spellings immaterial.

At oral argument, plaintiff argued that he reported an "arc flash blast" between March 1 and March 8, 2017. Plaintiff cites only to text messages exchanged on March 15, 2017, between Roggenkamp and SGRE employee Brad Tweeten ("Tweeten") and Roggenkamp's testimony about the text messages as evidence that plaintiff made the report in that time frame. (*See* Docs. 43-1, at 15-18; 43-2, at 1-4). The records cited establish that the event about which plaintiff complained occurred "about two weeks ago" but does not establish that plaintiff reported the incident between March 1 and March 8, 2017. To the contrary, the context of the conversation establishes that plaintiff reported the alleged arc flash after his termination on March 10, 2017. Tweeten stated in a text message that "no one is aware and is looking like a report for retaliation." (Doc. 43-2, at 3). Roggenkamp testified that the statement "no one is aware" meant that "the incident's not been reported," i.e. it was not reported at the time it happened. Plaintiff never testified affirmatively that he reported an arc flash between March 1 and March 8, 2017. The Court finds that plaintiff did not report the arc flash between March 1 and March 8, 2017.

Plaintiff also asserts that he made a complaint about the lack of arc flash gear at the Lundgren site on March 4, 2017. Again, the record does not support plaintiff's assertion. Plaintiff testified that he was in the warehouse, that Freund was looking for the arc flash coveralls, and that plaintiff told Freund that another technician who was there for training mentioned that the coveralls were missing. (Doc. 42-3, at 11). Even in the light most favorable to plaintiff, this interaction is not a safety complaint.

On March 8, 2017, Freund decided to request that Airway remove plaintiff from the Lundgren site. Freund testified that his decision to remove plaintiff from the Lundgren site "wasn't based purely on [plaintiff's conduct] between March 1st and March 8th." (Doc. 30-6, at 18). Freund also considered plaintiff's criminal history that plaintiff disclosed when plaintiff was considering applying to work for SGRE. (*Id.*). Freund

likewise considered plaintiff's pending criminal charges, and Freund believed that plaintiff would not be able to pass MEC's background check to get a badge. (*Id.*, at 19). In reaching his decision, Freund also considered plaintiff's poor performance and behavior after plaintiff decided not to apply with SGRE, including plaintiff spitting on the floor, name-calling, and being rude and disrespectful to other employees during meetings. (*Id.*, at 18-19). The "straw that broke the camel's back" was Freund's ultimately correct belief that plaintiff lied about where he was when he was supposedly at jury duty. (*Id.*, at 18).

Simmons testimony likewise reflects an escalating series of incidents leading to plaintiff's removal from the Lundgren site. Simmons witnessed plaintiff arrive late to a morning meeting. (*Id.*, at 31). Simmons testified that there were incidents of plaintiff not showing up to work at all. (*Id.*). Simmons also testified that based on the issues with plaintiff's criminal background, and the impending changes to MEC's background checks, Simmons did not want to invest further in plaintiff's training. (*Id.*, at 32). Simmons believed that the right decision was to give plaintiff a chance at a different facility that did not require a background check. (*Id.*).

Freund sent an email to Stevens on March 8, 2017, stating "[SGRE] is requesting that [plaintiff] be removed from site. [SGRE] is following the MEC mandated standards for backgrounds and we do not see [plaintiff] as being able to pass such requirements." (Doc. 30-7, at 101). In response, Stevens asked Freund and Simmons if plaintiff was excluded from all SGRE sites, or just those owned by MEC. (*Id.*, at 102). Freund responded that plaintiff was "an OK technician and [I] would not discount him from other non MEC . . . sites." (*Id.*).

After receiving Freund's email, Stevens ordered a criminal background check on plaintiff. Stevens received the criminal background check on March 8 or 9, 2017.[5] The background check reflected plaintiff's previous convictions for serious misdemeanors as well as the pending probation revocation and assault and false imprisonment charges. (*Id.*, at 106-19). Stevens made several phone calls to Click as well as numerous other customers to find an open position for plaintiff. (Doc. 30-6, at 90-91). Plaintiff disputes this fact, stating that there is no documentary evidence that Stevens looked for another position for plaintiff. Stevens' testimony is evidence, however, and plaintiff has not cited any facts in the record to dispute Stevens' testimony. *See Smith*, 926 F.3d at 484. On March 10, 2019, Stevens told plaintiff by phone and by email that he was being terminated because Airway had no other work for plaintiff.

## IV.    APPLICABLE LAW

Plaintiff asserts one count of wrongful termination against each defendant. Iowa is an at-will employment state, but Iowa law recognizes the tort of wrongful termination when an employer terminates an employee for reasons contrary to public policy. *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560-61 (Iowa 1988). The elements of wrongful termination are "(1) engagement in a protected activity, (2) adverse employment action, and (3) a causal connection between the two." *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 299 (Iowa 1998). Plaintiff alleges that he engaged in two protected activities; attending jury duty on February 28, 2017, and making workplace safety complaints. Defendants do not dispute that the activities were protected, nor do defendants dispute that plaintiff's termination by Airway was an adverse employment action.

---

[5] Plaintiff denies this fact but provided no citation to the record in support of his denial. (Doc. 44-1, at 24). Thus, the Court deems this fact admitted. *See* LR 56(b).

The causation standard in a wrongful termination case is high. *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 894 (Iowa 2015) (citation omitted). A plaintiff must prove "the protected conduct was the determining factor in the adverse employment action." *Id.* at 898 (citations omitted). The "determining factor" is the factor that tips the balance decisively in favor of termination, even if it is not the main reason for the decision. *Id.* A plaintiff in a wrongful termination action need not, however, prove that the employer had no legitimate business justification for the termination. *Id.* at 898. Although not an element of wrongful termination, an employer's legitimate business reasons for its actions are relevant because "an employer will prevail if it convinces the fact finder that the legitimate business reasons supporting the action were so strong as to defeat the conclusion that the protected conduct was the determining factor in the adverse employment decision." *Id.* at 899.

In *Brown v. Farmland Foods, Inc.*, this Court has predicted that the Iowa Supreme Court would apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), to common law wrongful termination claims at the summary judgment stage. 178 F. Supp. 2d 961, 979-80 (N.D. Iowa 2001). In *Manahl v. State*, the Iowa Court of Appeals noted in the years following *Brown* that the Iowa Supreme Court "has not confirmed that Iowa applies the *McDonnell Douglas* analysis to summary-judgment motions in wrongful-discharge tort claims." No. 16-2154, 2017 WL 4317318, at *7 (Iowa Ct. App. Sept. 27, 2017). The Court is unaware of any Iowa Supreme Court ruling since the *Manahl* holding that the *McDonnell Douglas* framework does not apply to summary judgment motions on wrongful termination claims. The Court will continue to apply the *McDonnell Douglas* framework for the reasons set forth in *Brown*.

Under the burden-shifting analysis, plaintiff bears the burden to establish a prima facie case of retaliation. *Brown*, 178 F. Supp. 2d at 980. If plaintiff carries his burden,

the burden shifts to defendants to come forward with a legitimate, non-retaliatory reason for plaintiff's termination. *Id.* If defendants meet their respective burdens, then plaintiff must present evidence that defendants' stated reasons were pretextual. *Id.*

## V.    ANALYSIS

### A.    Wrongful Termination – Jury Service

Defendants argue that they are entitled to summary judgment on plaintiff's wrongful termination claim based on plaintiff's jury service for two reasons. First, defendants argue that plaintiff's common law claim is barred by Iowa Code Section 607A.45. Second, defendants assert there is no evidence in the record to support a finding that plaintiff's jury service was the determinative factor in defendants' actions.

#### 1.    Iowa Code Section 607A.45

Iowa Code Section 607A.45 states "[a]n employer shall not deprive an employee of employment . . . because the employee receives a notice to report, responds to the notice, serves as a juror, or attends court for prospective juror service." IOWA CODE § 607A.45(1). Section 607A.45 goes on to provide:

> If an employer discharges an employee [because of the employee's jury service], the employee may within sixty days of the discharge bring a civil action for the recovery of wages lost as a result of the violation and for an order requiring the reinstatement of the employee. Damages recoverable shall not exceed lost wages for a period of six weeks. If the employee prevails, the employee shall be allowed reasonable attorney fees as determined by the court.

*Id.*, at 607A.45(2). Defendants argue that Section 607A.45(2) provides the exclusive remedy for plaintiff's claim that he was discharged for reporting for jury duty, barring plaintiff's wrongful termination claim on this basis. Defendants also assert any claim that plaintiff had under Section 607A.45(2) is barred by the sixty-day statute-of-limitations.

Plaintiff argues that although Section 607A.45 creates the relevant public policy to support his wrongful termination claim, it does not provide the exclusive remedy. Plaintiff, citing *George v. D.W. Zinser Co.*, 762 N.W.2d 865 (Iowa 2009), and *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894 (8th Cir. 2004), asserts that because Section 607A.45(2) only provides that an employee "may" bring a civil action under the statute, it does not create an exclusive remedy. Plaintiff also argues that Section 607A.45(2) cannot be plaintiff's exclusive remedy because it limits a plaintiff's recovery to six weeks of back pay.

In their replies, defendants argue that *George* and *Kohrt* do not support plaintiff's argument because the statutory remedies in those cases were administrative, not causes of action to be brought in court. Defendants also assert the legislature created the right to sue for retaliation for jury service and expressed its intent to limit the appropriate damages to six weeks of back pay.

The Iowa Supreme Court recently addressed an identical issue in *Ferguson v. Exide Technologies, Inc.* No. 18-1600, 2019 WL 6794312 (Iowa Dec. 13, 2019). In *Ferguson*, there was no dispute between the parties that the defendant terminated the plaintiff in violation of Iowa Code Section 730.5, Iowa's drug-free workplace statute. *Id.* at *2. Section 730.5 provides restrictions on workplace drug testing and provides that claims for violations of the restrictions "may be enforced through a civil action." Iowa Code § 730.5(15). An employee terminated as the result of an unlawful drug test can obtain "reinstatement . . . with or without back pay, or any other equitable relief as the court deems appropriate including attorney fees and court costs." *Id.* The plaintiff asserted both a common law wrongful termination claim and a claim under Section 730.5(15). *Ferguson*, 2019 WL 6794312 at *1. The defendant argued in its motions for summary judgment and judgment as a matter of law that plaintiff's wrongful termination claim was barred by Section 730.5(15). *Id.* at *2.

The Iowa Supreme Court held as follows:

> [W]hen the legislature includes a right to civil enforcement in the very statute that contains the public policy a common law claim would protect, the common law claim for wrongful discharge in violation of public policy becomes unnecessary. In this situation, the legislature has weighed in on the issue and established the parameters of the governing public policy. If the legislature considers the remedies it has provided inadequate, it is free to modify them. However, we need not provide an alternative court remedy when the legislature already provided one. Thus, we hold that when a civil cause of action is provided by the legislature in the same statute that creates the public policy to be enforced, the civil cause of action is the exclusive remedy for violation of that statute.

*Id.* at *5. The Southern District of Iowa also recently addressed this issue. *See Dickey v. Turner Constr. Co.*, 4:19-cv-00154-HCA, 2019 WL 6771751 (S.D. Iowa Oct. 1, 2019). That court reached the same conclusion as the Iowa Supreme Court, holding that Section 750.5(15) precludes an action for wrongful termination because the legislature "conducted the requisite balancing of competing interests and provided a private cause of action and a limited set of remedies when . . . an employer terminates an employee based on a refusal to take a drug test that did not comply with the statute." *Id.* at *8.

Iowa Code Sections 607A.45 and 750.5 are similar in all relevant respects. They create both a relevant public policy and a civil remedy to enforce that policy. *Compare* Iowa Code § 607A.45(2), *with* § 750.5(15). Both statutes use permissive language stating that the employee "may" bring the civil action, and both provide a limited set of remedies. *Id.* For the same reasons articulated in *Ferguson* and *Dickey*, the Court finds that Iowa Code Section 607A.45 is the exclusive remedy for plaintiff's claim that he was terminated in retaliation for his jury service, and plaintiff's wrongful termination claim is barred as a matter of law.

There is no dispute that SGRE removed plaintiff from the Lundgren site on March 8, 2017, and that Airway terminated plaintiff on March 10, 2017. Plaintiff filed this

action on July 19, 2018, 498 and 496 days after his removal and termination respectively. Thus, to any extent that plaintiff asserts his claim under Section 607A.45, plaintiff's claim is barred by the sixty-day statute-of-limitations. *See* Iowa Code § 607A.45(2) ("[T]he employee may within sixty days of the discharge bring a civil action . . . ."). Plaintiff's claim that he was terminated because he attended court as a prospective juror fails as a matter of law, and defendants' motions for summary judgment are **granted** on that claim.

### 2. *Causation*

Even if plaintiff's wrongful termination claim for jury service did not fail because of Section 607A.45, it fails because plaintiff cannot establish a prima facie case of wrongful termination. There is no evidence in the record from which a jury could find that plaintiff appearing as a prospective juror was the determining factor in plaintiff's removal from the Lundgren site and subsequent termination. As to Airway, plaintiff emailed Stevens informing Stevens of plaintiff's jury duty. (Doc. 43-2, at 9). Freund sent an email on March 1, 2017, to Click and Chase Hord of Airway, among others, stating in relevant part, "Jacob did not work yesterday or today for what he said was jury duty." (Doc. 43-4, at 6). There is nothing in any communications between Stevens and Click which would lead any reasonable juror to conclude that plaintiff's jury service was connected to his termination. (*See, e.g.*, Doc. 36-1, at 6-7, 47, 53-54, 58).

As to SGRE, plaintiff exchanged text messages with Freund on February 27, 2017, about his jury service. (Doc. 43-2, at 11-14). Freund did not express any hostility; he merely advised plaintiff that if he was released early he was expected to work a half day. (*Id.*). The subsequent emails within SGRE sought to determine whether plaintiff was, in fact, at jury duty on both February 28 and March 1, 2017. (Doc. 43-4, at 8-9). No reasonable juror could read the emails between Simmons and Freund as expressing an intent to retaliate against plaintiff for serving on a jury. To the contrary, the emails show that if plaintiff had in fact been at jury duty on both February 28 and March 1, 2017,

then he would not have been removed from the Lundgren site. Defendants' concern was not that plaintiff was serving jury duty but, rather, that he was "not telling the truth about what he is doing." (Doc. 43-4, at 8). Simmons' suggestion that plaintiff be required to provide proof of his jury service further indicates that defendants were concerned about plaintiff's untruthfulness, not his participation on a jury. (*Id.*). There is no dispute that plaintiff was not at jury duty on March 1, 2017. (Doc. 30-1, at 16). Plaintiff was attending an initial appearance in a criminal case in which he was the defendant. (*Id.*). Plaintiff also alleges he was sick but did not call in sick. (Doc. 30-6, at 61).

Thus, even if plaintiff's wrongful termination claim based on his jury service did not fail as a matter of law under Iowa Code Section 607A.45, plaintiff's claim would still fail because there is no evidence that his jury service was the determining factor in defendants' adverse employment actions.

### B. Wrongful Termination – Safety Complaints

#### 1. SGRE

SGRE argues that it is entitled to summary judgment on plaintiff's wrongful termination claim based on plaintiff's safety complaints for three reasons. First, defendants argue that they cannot be liable for wrongful termination because Airway, not SGRE, terminated plaintiff's employment. Second, SGRE argues that plaintiff cannot establish that his safety complaints were the determining factor in his removal from the Lundgren site. Determining who the pertinent decision-makers were and what knowledge they had at the time of plaintiff's removal from the Lundgren site is important to this aspect of SGRE's argument. Finally, SGRE asserts that it had legitimate, non-retaliatory reasons for removing plaintiff from the Lundgren site.

##### a. Adverse Employment Action

First, SGRE argues that it cannot be liable for wrongful termination because it only removed plaintiff from the Lundgren site—Airway ultimately terminated plaintiff's

employment. SGRE asserts that "[t]he 'wrongful termination in violation of public policy' tort is not, on its face, a general anti-retaliation statute that provides remedies for discipline, demotion, or other 'materially adverse' retaliatory conduct." (Doc. 35, at 11). SGRE does not cite any authority for its assertion.

Some Iowa cases describe the second element of a wrongful termination claim as "discharge," *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 281 (Iowa 2000), but other cases describe it more broadly as any "adverse employment action," *Teachout*, 584 N.W.2d at 299. Although termination is one example of an adverse employment action, *Teachout*, 584 N.W. 2d at 300, the Iowa Supreme Court's language implies that other, lesser actions could satisfy the second element of plaintiff's claim. *See* 2 Dan B. Dobbs et al., DOBBS' LAW OF TORTS § 703 (2019) ("For convenience, the term wrongful discharge may be applied to any adverse employment action that would undermine public policy sufficiently to be actionable."). Because SGRE has not cited any authority limiting "adverse employment actions" to only termination, the Court will assume for purposes of summary judgment that plaintiff's removal from the Lundgren site constitutes a materially adverse employment decision sufficient to satisfy the second element of a wrongful termination claim.[6]

---

[6] In his statement of facts, plaintiff alleges he was left out of crane chain training on March 4, 2017. (Doc. 41-2, at 7). Freund testified that plaintiff was left out of the training because only a limited number of people could be in the tower where the training took place and plaintiff was lower on the "totem pole" because he was not an SGRE employee or a lead technician. (Doc. 30-3, at 15). Plaintiff does not argue in his brief that being excluded from this training was an adverse employment action giving rise to his claim and thus waived that argument. Nor does plaintiff allege that his being left out of the training was because of his safety complaints. Even if plaintiff argued that being left out of a single training was an adverse employment action, the Court finds that such minor exclusion, without any other evidence, is the type of "petty slight[ ]" or "minor annoyance[ ]" that does not rise to the level of a "materially adverse" employment action. *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 588 (Iowa 2017) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

In assessing SGRE's second argument, that plaintiff's safety complaints were not the determinative factor in his removal from the Lundgren site, SGRE asserts that the Court must determine who the decision-makers were and what knowledge they had at the relevant time. In determining whether a plaintiff has made a prima facie case of wrongful termination, a court must determine what knowledge, if any, the relevant decision-makers had about the plaintiff's protected conduct. *See Fitzgerald*, 613 N.W.2d at 289 ("Of course, if the employer has no knowledge the employee engaged in the protected activity, causation cannot be established."); *see also McMahon v. Cognizant Tech. Sols. U.S. Corp.*, No. 4:17-CV-00155-SMR-HCA, 2018 WL 3460403, at *3 (S.D. Iowa June 6, 2018) ("An employee must show that the decision-maker was aware the employee took part in a protected activity to satisfy the causation element."); *Schoonover v. Schneider Nat'l Carriers, Inc.*, 492 F. Supp. 2d 1103, 1157 (S.D. Iowa 2007) ("[I]f the decisionmaker was unaware of the protected activity, no reasonable factfinder could decide the plaintiff's discharge occurred . . . 'because' of engagement in the protected activity."). There is no dispute that the two relevant decision-makers for SGRE as to plaintiff's position at the Lundgren site were Freund and Simmons. It is also undisputed that Simmons had no knowledge of plaintiff's safety complaints. Thus, Simmons could not, as a matter of law, have retaliated against plaintiff.

Freund, on the other hand, was aware of some of plaintiff's safety complaints. Plaintiff complained at least twice to Freund in November 2016 because Freund asked plaintiff to inspect and sign off on anchor points inside the wind turbines, but plaintiff was not qualified to do so. Plaintiff and another technician complained to Freund about driving on icy roads and about the risk of ice falling off the turbine blades on January 15, 2017. At the January 17, 2017 training session, plaintiff raised safety concerns in front of Freund. Plaintiff also complained to Freund about not being trained to change

an inline pump and about pumping coolant from the basement of a turbine while it was running in mid-January 2017.

Freund was also aware that Munoz spoke to several technicians on February 7, 2017, about an anonymous report that someone was falsifying drug tests at the Lundgren site. Munoz's notes indicate that she spoke to plaintiff and five other technicians that day. Freund did not know who made the report about the trust testing issues, or specifically which technicians Munoz met with.

Relying on *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 367 (8th Cir. 1994), plaintiff argues that Freund believed that plaintiff made the complaint which led to Munoz's February 7, 2017 visit to the Lundgren site. (Doc. 44-1, at 14-15). The record before the Court here is distinguishable from *Reich*. In *Reich*, the plaintiff expressed concerns to the president of the company about whether a chemical spray was safe. 32 F.3d at 363. The plaintiff made a complaint to OSHA, which led to an on-site investigation about the chemical spray. *Id.* Three days after the on-site investigation, plaintiff was late to work and was terminated. *Id.* The president of the company's son told plaintiff that his father "knows what is going on in this factory." *Id.* at 343-64. The OSHA investigator's notes indicated that the president was upset that the investigator would not divulge the complainant's name so he could "take care of the problem." *Id.* at 364. The investigator's notes also indicated that the president believed the complainant was "a woman who had raised similar complaints to the company in the past." *Id.*

The only evidence plaintiff cites in support of his contention that Freund suspected that plaintiff made the anonymous complaint is that plaintiff raised different complaints in front of Freund during the January 17, 2017 training. (*Id.*, at 15). There is nothing in the record to support a finding that plaintiff previously complained to Freund about falsified drug test. There is also no evidence like the statements in *Reich* that Freund suspected that plaintiff made the report, or that Freund ever attempted to find out from

Munoz who made the report. Plaintiff does not offer more than "mere speculation" that Freund believed his complaints led to Munoz's February 7, 2017 investigation, and the Court cannot rely on such speculation.

As the Court found above, there is also no evidence in the record to support plaintiff's contention that he raised safety complaints to Freund between March 1 and March 8, 2017.

### c.    *Causation*

SGRE's second argument is that plaintiff cannot establish that his safety complaints were the determining factor in his removal from the Lundgren site. To survive summary judgment, plaintiff must show that there is a genuine issue of material fact about whether plaintiff's safety complaints to Freund were the determinative factor in Freund's decision to have plaintiff removed from the Lundgren site. Plaintiff does not point to any direct evidence, but plaintiff argues that there is circumstantial evidence that his safety complaints were the determinative factor in his removal. (Doc. 44-1, at 10-11, 13-15). In the absence of direct evidence of retaliation, courts look at a variety of circumstantial factors to determine if there is an inference of a retaliatory motive, such as:

> [T]he temporal proximity between the protected activity and the adverse action, indications of pretext such as inconsistent application of policies and shifting explanations, antagonism or hostility toward protected activity, the relation between the discipline and the protected activity, and the presence of intervening events that independently justify discharge.

*McMahon*, 2018 WL 3460403, at *4. This Court has also considered how the employer treated similarly situated employees who did not engage in the protected conduct and whether the employer has a pattern of taking adverse action against employees who engaged in protected conduct. *See Brown*, 178 F. Supp. 2d at 982; *see also Townsend v. Bayer Corp.*, 774 F.3d 446, 460 n.3 (8th Cir. 2014) (holding that evidence of the

employer's treatment of similarly situated comparators was relevant for determining causation in a False Claims Act retaliation claim).

### i.    *Temporal Proximity*

A close proximity between an employee's engagement in protected conduct and the employees discharge is a significant factor in establishing the causation element of a wrongful termination claim. *Brown*, 178 F. Supp. 2d at 982. Temporal proximity, however, "without more, is insufficient to generate a jury question on retaliation." *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 203 (Iowa 1997) (citation omitted). Thus, the fact that an employee engaged in a protected activity "does not immunize the [plaintiff] from discharge for past or present inadequacies, unsatisfactory performance, or insubordination." *Hulme v. Barrett*, 480 N.W.2d 40, 43 (Iowa 1992). "As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation." *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011).

In *Phipps v. IASD Health Services Corp.*, the Iowa Supreme Court found that the plaintiff's termination approximately one month after filing a grievance was insufficient to support a retaliatory motive. 558 N.W.2d at 203. Eighth Circuit precedent is consistent with the Iowa Supreme Court's rulings in *Phipps*. The Eighth Circuit Court of Appeals has held that an interval of two weeks between protected conduct and an adverse employment action is "sufficient, but barely so, to establish causation." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002). Conversely, an "interval of two months between the complaint and [the plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [the plaintiff's] favor on the matter of causal link." *Kipp v. Mo. Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir. 2002).

Given that Simmons was unaware that plaintiff made any safety complaints, the relevant temporal relationship is between plaintiff's removal from the Lundgren site and the last safety complaint about which Freund was aware. Viewing the record in the light most favorable to plaintiff, plaintiff's complaints during the January 17, 2017 training are the last complaints about which Freund knew.[7] Freund requested plaintiff's removal from the Lundgren site on March 8, 2017, approximately seven weeks after the last known complaint. Under both Iowa and Eighth Circuit precedent, the Court cannot infer any causal relationship between his removal from the Lundgren site and his safety complaints approximately seven weeks earlier.

### ii.    *Similarly Situated Individuals*

Plaintiff argues that his removal from the Lundgren site must have been retaliatory because Thomas, another technician, "has criminal convictions and continues to work at the Lundgren site." (Doc. 44-1, at 11). In his statement of facts, plaintiff alleges that no other technicians have been removed from SGRE sites because of the MEC background requirements, and that other technicians in addition to Thomas have criminal convictions and were not removed from the Lundgren site. (Doc. 41-2, at 3-4). Plaintiff also argued at the hearing that plaintiff was treated differently than similarly situated technicians and that there was a pattern of retaliatory behavior by Freund. Plaintiff's arguments are not supported by the record.

First, as to whether "similarly situated" technicians remained at the Lundgren site, plaintiff has failed to show that any of his fellow technicians were similarly situated. For plaintiff to present evidence of Freund's treatment of similarly situated technicians at trial plaintiff must show by a preponderance of evidence that the other technicians were

---

[7] Plaintiff also alleges that he made other complaints in "mid-January 2017." (Docs. 30-6, at 75-76; 43-3, at 9). Even taking this as true and assuming that some complaints in "mid-January 2017" occurred after January 17, 2017, there was still around a six-week time gap between the complaints and plaintiff's termination. This difference is immaterial to the Court's analysis.

"similarly situated in all relevant respects." *Townsend*, 774 F.3d at 461 (citation and internal quotation marks omitted).

Plaintiff offers two pieces of evidence to support his allegation that other technicians were similarly situated in terms of their criminal records. First, plaintiff offers his own handwritten list of what he believes the other technicians' criminal backgrounds were. (Doc. 43-3, at 16). Plaintiff also offers a portion of Freund's deposition in which Freund testified that the nature of Thomas' criminal background was operating while intoxicated "or something like that." (Doc. 42-5, at 4).

SGRE objects to plaintiff's assertions about other technicians' criminal histories. SGRE argues that plaintiff's handwritten list is hearsay because it is a statement made by plaintiff out of court, and plaintiff offers the list to prove the truth of the matter asserted i.e. that other technicians had similar criminal backgrounds. (Doc. 51, at 4-5). The Court agrees with SGRE's assessment and finds that plaintiff's handwritten list is inadmissible hearsay. FED. R. EVID. 801(c), 802. Plaintiff does not offer any evidence that he will be able to prove the other technicians' criminal histories with admissible evidence at trial. *See Progressive Cas. Ins. Co.*, 80 F. Supp. 3d at 934.[8]

Freund's testimony is likewise inadmissible to prove the existence of Thomas' criminal background. There is nothing in that portion of Freund's deposition transcript that explains how Freund came to be aware of Thomas' criminal history. Without any indication that Freund had seen an official record of the conviction, Freund does not have personal knowledge and thus cannot testify about the existence of the conviction. *See*

---

[8] There are other evidentiary issues with plaintiff's hand-written list. Plaintiff has failed to identify the source of his information about the other employees' criminal history. Whatever the source, whether documentary or from the employees themselves, it would constitute another layer of hearsay. Plaintiff has also not alleged facts that would show that the decision-makers were aware of the alleged criminal histories of the other employees. Unless the decision-makers knew of those other employees' criminal histories, they cannot be alleged to have knowingly treated plaintiff differently from the other employees.

FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Similarly, if Thomas told Freund about his conviction then Thomas' statement to Freund is hearsay because plaintiff is offering it to prove the existence of Thomas' conviction, not Freund's belief that Thomas had the conviction. FED. R. EVID. 801(c). Regardless, it is plaintiff's burden to prove that the evidence is admissible, *Progressive Cas. Ins. Co.*, 80 F. Supp. 3d at 934, and plaintiff has failed to meet his burden.

Even if the evidence offered by plaintiff were admissible, it would still be insufficient as a matter of law to show that plaintiff was similarly situated to the other technicians who remained at the Lundgren site. The evidence offered by plaintiff, if admissible, fails to show that the other technicians were similarly situated in three key aspects. First, plaintiff's list only purports to state what crimes the other technicians were charged with, rather than convicted of. In addition to the new charges in February 2017, plaintiff had disclosed multiple *convictions* to Freund in the fall of 2016. Second, plaintiff's list does not indicate when or where any of the alleged charges or convictions occurred. It is possible that, unlike plaintiff, none of the other technicians were charged with crimes while they were working at the Lundgren site. Finally, plaintiff's list, and Freund's testimony, do not indicate what level of misdemeanor or felony any of the other technicians were charged with or convicted of. Because plaintiff's list does not indicate in which state the other technicians were charged, the Court cannot even begin to speculate about whether the other technicians were charged with serious misdemeanors. Thus, even if plaintiff's evidence were admissible, plaintiff has not shown that he was similarly situated to any of the other technicians in terms of his criminal history, and the Court cannot draw any inference in his favor based on SGRE's treatment of other technicians.

Plaintiff has also failed to establish that SGRE had a pattern of removing other technicians who made safety complaints. Plaintiff has not shown that similarly situated technicians who did not make safety complaints were retained, nor has plaintiff shown that SGRE removed other technicians from the Lundgren site after making safety complaints. To the contrary, the record shows that other technicians who reported safety concerns were not removed from the Lundgren site. For example, Meadows also complained about the icy conditions on January 15, 2017. (Doc. 30-1, at 9). Plaintiff has not offered any evidence that SGRE removed Meadows from the Lundgren site following his complaints. Similarly, none of the other technicians who raised safety concerns during the January 17, 2017 resilience training or who spoke to Munoz during the February 7, 2017 on-site inspection were removed from the site. (*Id.*, at 22-23).

Plaintiff has not offered any admissible evidence that similarly situated technicians who did not make safety complaints were retained at the Lundgren site, or that other technicians who made safety complaints were removed from the Lundgren site. Thus, plaintiff's argument that there is evidence of retaliation because of SGRE's treatment of other technicians fails.

### iii. *Antagonism toward Protected Activity*

Plaintiff points to Freund's alleged antagonism toward safety complaints as circumstantial evidence that plaintiff's safety complaints were the determining factor in Freund's decision to remove plaintiff from the Lundgren site. Plaintiff's statement of facts makes multiple assertions of hostility, but the underlying documents support only two specific incidents, and one general allegation.

First, plaintiff alleges that on January 15, 2017,[9] he and Meadows called a stop work due to an ice storm that caused icy roads and ice on the turbine blades. Plaintiff asserts that Freund called plaintiff and Meadows "pussies," told them to "suck it up" and asked if they were "scared of a little ice." (Docs. 42-2, at 1-2; 42-4, at 12-13; 43-3, at 9; 45-5, at 11). Second, plaintiff states that on January 20, 2017, Freund sent two inexperienced technicians into a tower to change an inline pump. (Doc. 43-3, at 7). Plaintiff was not one of the technicians sent into the tower. (Doc. 43-5, at 11). Cameron Panzi ("Panzi") was one of the technicians sent into the tower to change the inline pump. (*Id.*, at 13). Panzi stated in a February 7, 2017 email that he felt like he was the "lowest on the totem pole" at the Lundgren site based on a lack of job opportunities. (*Id.*). Panzi felt that Freund had "pushed [him] aside." (*Id.*). Panzi was afraid of refusing Freund's order to change the inline pump because he was "scared of being demoted even more." (*Id.*). Panzi stated that Freund sent a newly employed SGRE technician rather than a more experienced SGRE technician into the tower with Panzi to replace the inline pump. (*Id.*). Finally, plaintiff makes a general allegation about hostility that occurred in mid-January 2017. Plaintiff asserts that Freund "would criticize [p]laintiff if he asked for gloves, batteries for flashlights, hand and feet warming packs or tinted safety glasses." (Doc. 43-3, at 9).

Even viewing the evidence in the light most favorable to plaintiff, plaintiff's allegations of "hostility" do not amount to more than a scintilla of evidence of causation. Turning first to plaintiff's general allegations that Freund "criticized" him for requesting materials, it is unclear which of these requests can be construed as safety complaints, rather than requests for plaintiff's comfort. Regardless, the fact that Freund "criticized"

---

[9] In one statement of fact, plaintiff refers to this incident as occurring on January 17, 2017, but it is clear from the record that the incident took place on January 15, 2017. (*See* Docs. 41-2, at 6; 42-2, at 1; 42-4, at 12).

plaintiff for his requests, without more, is insufficient to show that Freund was hostile to safety concerns, much less to show plaintiff's safety complaints were the determining factor in Freund's decision to remove plaintiff from the Lundgren site. *See Wusk v. Evangelical Ret. Homes, Inc.*, No. 15-0166, 2015 WL 9450914, at *4 (Iowa Ct. App. Dec. 23, 2015) ("[M]ere generalities of a negative change in the way an employee was treated after [engaging in a protected activity] are insufficient to prove that the [protected activity] was a determining factor in a subsequent adverse employment action."); *McMahon v. Mid-Am. Constr. Co. of Iowa*, No. 99-1741, 2000 WL 1587952, at *4 (Iowa Ct. App. Oct. 25, 2000) (Upholding grant of summary judgment in favor of employer when plaintiff could only point to "mere generalities" to show that his termination was caused by his workers' compensation claim).

Panzi's email is of little probative value to plaintiff's wrongful termination claim. There is no indication in the email, nor has plaintiff pointed to any other evidence in the record, that Panzi made safety complaints before January 20, 2017. Thus, Panzi's statements that he was lower on the totem pole, or that Freund brushed him aside, are not evidence of hostility to safety complaints. Similarly, Panzi's subjective belief that he would be demoted for refusing to work on the inline pump, without any factual basis for that opinion, is insufficient to establish the existence of hostility toward the protected activity here. *See Pennington v. Bd. of Trs. of Univ. of Ark.*, No. 4:10-cv-1071-DPM, 2012 WL 2254247, at *1 (E.D. Ark. June 15, 2012), *aff'd sub nom.* 500 Fed. App'x 567 (8th Cir. 2013) ("The subjective belief that one was discriminated against will not forestall judgment as a matter of law."); *Myers v. Croell Redi-Mix, Inc.*, 672 F. Supp. 2d 889, 908 (N.D. Iowa 2009) (holding that plaintiff's "subjective belief" that male workers were provided more hours was "insufficient to overcome summary judgment").

The only evidence in the record that is relevant to Freund's alleged hostility toward safety complaints is (1) plaintiff's allegation that Freund called plaintiff and Meadows

"pussies," asked if they were scared of a little ice, and told them to "suck it up" after plaintiff and Meadows called the January 15, 2017 stop work, and; (2) Panzi's assertion that on January 20, 2017, Freund sent a newly employed technician rather than a more experienced technician into the tower with Panzi to replace the inline pump. (Doc. 43-5, at 13). These two incidents are, as a matter of law, of limited value in showing that plaintiff's safety complaints were a determining factor in his removal from the Lundgren site.

First, both alleged incidents of hostility occurred six to seven weeks before plaintiff's removal. As the Court noted above, a gap of two weeks between a protected activity and termination is barely sufficient to draw a causal inference, *Smith*, 302 F.3d at 833, and a gap of more than a month is too long to draw any causal relationship, *Phipps*, 558 N.W.2d at 203. The Court finds that the same logic applies to the temporal relationship between the alleged hostility toward a protected activity and the adverse employment action. Thus, the Court cannot draw a causal relationship between the two alleged incidents of hostility toward safety complaints and plaintiff's removal from the Lundgren site.

Even if the alleged hostility occurred closer to plaintiff's removal from the Lundgren site, Freund's actions are insufficient to create an inference of causation. Both instances of alleged hostility involved other technicians instead of or in addition to plaintiff. Plaintiff and Meadows both called for the January 15, 2017 stop work order, but there is no evidence in the record that Freund took any retaliatory action against Meadows. Similarly, Panzi was one of the complainants on January 20, 2017, about the replacement of the inline pump,[10] and the record is devoid of any evidence that Freund

---

[10] Plaintiff alleged in his deposition that he raised a complaint about not wanting to change out an inline pump, but it is not clear if this was part of the January 20, 2017 incident or at a different time. (Docs. 41-2, at 8; 42-4, at 7).

took any adverse employment action against Panzi after January 20, 2017. There is no evidence that Freund's alleged hostility was ever connected to adverse employment actions against any other technicians, which undermines any inference that the Court could draw between Freund's alleged hostility and plaintiff's removal from the Lundgren site.

Also, the evidence of alleged hostility to the protected activity here is significantly weaker than the evidence held to support an inference of causation in other cases. For example, the Iowa Supreme Court upheld a jury verdict on a wrongful termination claim when an employee reported a workplace injury, and in response the employer told the plaintiff that he was not going to pay workers' compensation benefits and fired the plaintiff. *Niblo v. Parr Mfg., Inc.*, 445 N.W. 2d 351, 353 (Iowa 1989). Similarly, the Iowa Supreme Court upheld a jury verdict on an Iowa Civil Rights retaliation claim when the supervisor told the employee who lodged the complaint that the supervisor "didn't like that civil rights mess hanging over his head." *City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 536 (Iowa 1996). Plaintiff cites only one relevant case in his brief, *Reich*, 32 F.3d 361. As the Court found above, the facts of *Reich* are easily distinguishable from this case, and the hostility to the protected activity in *Reich* occurred only three days before the plaintiff was terminated, compared to the seven-week gap here. *See id.* at 363-64.

To survive summary judgment, plaintiff must present more than a mere scintilla of evidence; there must be evidence on which a reasonable jury could find for plaintiff. *See Rohr*, 826 F.3d at 1052 (citation omitted). The minimal evidence of Freund's hostility to safety complaints, remote in time from plaintiff's termination and unconnected from any other adverse employment decisions, amounts to nothing more than a mere scintilla of evidence that plaintiff's complaints were the determining factor in his removal from the Lundgren site.

### iv.     *Presence of Intervening Events*

The final relevant consideration in determining whether a reasonable jury could find that plaintiff's safety complaints were the determining factor in Freund's decision to remove plaintiff is the presence of intervening events that independently justified Freund's decision.  It is well established that the presence of intervening events can sever any causal inference that may otherwise be drawn from the evidence.  *See Mervine v. Plant Eng'g Servs., LLC*, 859 F.3d 519, 527 (8th Cir. 2017) ("Whatever causal inference that might have been drawn from the temporal proximity between [plaintiff]'s protected activity and the termination of his employment was vitiated by the intervening, later-corroborated employee complaints, as well as by the later-discovered additional misconduct."); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) ("[Plaintiff]'s intervening unprotected conduct eroded any causal connection that was suggested by the temporal proximity of his protected conduct and his termination."); *see also Freeman v. Ace Tel. Ass'n.*, 467 F.3d 695, 698 (8th Cir. 2006).  Intervening conduct can break the causal chain between the protected activity and the plaintiff's termination even if the intervening conduct is disputed.  *Mervine v. Plant Eng'g Servs., LLC*, Civil No. 14-3080 ADM/TNL, 2016 WL 1273195, at *9 (D. Minn. Mar. 31, 2016), *aff'd*, 859 F.3d 519 (8th Cir. 2017).

Again, plaintiff's last complaint occurred on January 17, 2017, or otherwise in mid-January 2017.  On February 15, 2017, Freund emailed Stevens and Click to confirm that Freund had enrolled plaintiff in level four/five training, which was scheduled in April 2017.  On or about February 21, 2017, Freund became aware that plaintiff had been charged with assault and false imprisonment.  (Docs. 30-1, at 17; 30-7, at 100).  Freund was aware that the new MEC standards for background checks would be implemented in the spring of 2017.  Plaintiff served on jury duty on February 28, 2017, and did not come to work at the Lundgren site on March 1, 2017.

On March 1, 2017, Freund expressed doubts about whether plaintiff attended jury duty on February 28 and March 1, 2017. There is no dispute that plaintiff did not attend jury duty on March 1, 2017, and plaintiff lied to Freund about the reason for his absence that day. Also on March 1, 2017, Freund believed plaintiff may be incarcerated on his pending charges.[11] (Doc. 30-7, at 138). Freund told Simmons "[j]ail time plus the fact that he is intentionally not telling the truth about what he is doing will equal me requesting [plaintiff] be removed from site." (Doc. 30-7, at 95). After learning about plaintiff's new criminal charges, in addition to his previously disclosed criminal history, Freund believed that plaintiff would not be able to pass the MEC background check. (Doc. 31-1, at 19). Plaintiff denies that Freund believed he would not pass the MEC background check but cited no facts in the record in support of his denial. (Doc. 44-1, at 22). Thus, plaintiff has admitted that Freund believed plaintiff would not pass the background check. *See* LR 56(b).

Freund testified that plaintiff's behavior and "general performance as a person on-site went downhill" after plaintiff decided not to pursue working directly for SGRE in September 2016. (Doc. 30-6, at 18). Freund's assessment of plaintiff's behavior was corroborated by Simmons' March 1, 2017 email to Freund stating "I have watched [plaintiff's] actions while I am at site. I think we can and should expect better from our staff or from our contract employees." (Doc. 30-7, at 95).

On March 8, 2017, Freund made the decision to remove plaintiff from the Lundgren site. Freund testified that the "straw that broke the camel's back" was his belief that plaintiff was lying to him about where plaintiff was when he was supposedly at jury duty. (Doc. 30-6, at 18). Simmons testified in his deposition that he had a

---

[11] Freund's belief about plaintiff's incarceration appears to have been correct. Plaintiff ultimately pleaded guilty to Assault Causing Bodily Injury and was sentenced to ten days in jail with 355 days suspended. (Doc. 51-3, at 11).

conversation with Freund about removing plaintiff from the Lundgren site for "attitude, background checks, [and] site presence." (Doc. 30-6, at 35). Freund sent an email to Stevens requesting that plaintiff be removed from the Lundgren site and stating that "[SGRE] is following the MEC mandated standards for backgrounds and we do not see [plaintiff] as being able to pass such requirements." (Doc. 30-7, at 101).

Simmons and Freund met with plaintiff on March 8, 2017, to tell plaintiff he was being removed from the Lundgren site. (Doc. 30-6, at 20, 35, 77). There is no dispute that at that time Simmons told plaintiff he was being removed because Simmons believed that plaintiff would not pass the MEC background check. (*Id.*).

The presence of intervening events between plaintiff's last protected activity, or any hostility toward such activity, and plaintiff's termination severs any causal connection that would support plaintiff's claim. In *Freeman v. Ace Telephone Association*, the plaintiff reported to the board of directors that the board's policy of reimbursing each board member for mileage to attend board meetings, even when the board members carpooled, may have violated federal tax laws. 467 F.3d at 696. The plaintiff was terminated less than a month later and filed suit for retaliatory discharge under a state whistleblower act. *Id.* at 697. The court noted that two weeks after plaintiff's report, plaintiff admitted to having a sexual relationship with a female employee, lying about the relationship, continuing the relationship after promising to end it, and using a company credit card to further the sexual relationship. *Id.* at 698. The court upheld the district court's grant of summary judgment because, in light of the intervening events, "no reasonable person could conclude on this record that [the plaintiff]'s report to the board about its mileage policy was causally related to the decision to fire him." *Id.*

Although the details here are not as sordid, plaintiff's intervening conduct still severs any causal relationship between his protected conduct and his removal as a matter of law. There is no dispute that even after plaintiff's complaints in mid-January 2017,

as of February 15, 2017, Freund still planned to send plaintiff to Florida for level four/five training. On February 21, 2017, Freund became aware of plaintiff's new criminal charges. At that point MEC's increased background checks were set to go into effect within a month or two. (Doc. 30-6, at 19). Freund and Simmons both believed that plaintiff would not pass the increased background check, and plaintiff has offered no evidence from anyone at MEC that he would have been able to pass the background check. On March 1, 2017, Freund also came to believe that plaintiff was facing jail time, and that plaintiff lied about attending jury duty. These intervening events are more than enough to sever any causal connection between plaintiff's protected activity and his removal from the Lundgren site.

Plaintiff appears to argue that the various reasons for his removal from the Lundgren site are contradictory and therefore show retaliation. (Docs. 40-1, at 2-3; 44-1, at 15). "Substantial change in an employer's explanation over time can be evidence of pretext, but an elaboration generally is not." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1004 (8th Cir. 2012). Freund and Simmons told plaintiff at the time of his removal that he was being removed due to perceived issues with his MEC background check. Freund's email to Stevens stated that the decision to remove plaintiff was due to his criminal background. The other reasons provided by Freund for plaintiff's removal are not substantially different; they are merely an elaboration on SGRE's decision to remove plaintiff. Further, on March 1, 2017, Freund stated that his belief that plaintiff lied about his whereabouts when plaintiff was supposedly at jury duty, and the fact that plaintiff may have to serve jail time, warranted plaintiff's removal from the Lundgren site. Freund testified that his decision was also motivated by plaintiff's general behavior, which is confirmed by Simmons' March 1, 2017 response to Freund. Even viewing the record in the light most favorable to plaintiff, the explanations for plaintiff's

removal from the Lundgren site are interrelated elaborations which are not substantially different or contradictory.

Plaintiff's citation to *Kohrt*, 364 F.3d at 898 is not persuasive. (Doc. 44-1, at 15). In *Kohrt*, the only issue before the court on the plaintiff's wrongful termination claim was whether, as a matter of law, the plaintiff could bring a wrongful termination claim premised on violations of the Iowa Occupational Safety and Health Act ("IOSHA"). *Id.* at 899-902. The parties here agree for purposes of summary judgment that the IOSHA creates a public policy that can support a wrongful termination claim. In *Kohrt,* the only discussion of the plaintiff's allegations of pretext referred to the plaintiff's age discrimination claim. *Id.* at 898. Regardless, the court held that the plaintiff's allegations about his performance reviews were insufficient to show that the defendant's reasons for terminating and declining to rehire plaintiff were pretextual, and the court affirmed summary judgment in the defendant's favor. *Id.* Thus, *Kohrt* does not support plaintiff's argument.

In sum, the gap in time between plaintiff's protected activity and his removal from the Lundgren site is too long to draw any causal connection, particularly considering the lack of other evidence of causation and the significant intervening events justifying plaintiff's removal. Likewise, any evidence of Freund's hostility toward safety complaints is too remote in time and separated by intervening events to amount to more than a scintilla of evidence that plaintiff's safety complaints were the determining factor in Freund's decision. Because plaintiff has failed to generate an issue of material fact that his protected conduct was the determining factor in his removal, plaintiff has failed to present a prima facie case of wrongful termination. SGRE's motion for summary judgment is **granted** as to plaintiff's wrongful termination claim based on plaintiff's safety complaints.

### d.     *Legitimate Business Reason/Pretext*

SGRE also asserts that it had legitimate, non-retaliatory reasons for removing plaintiff from the Lundgren site.  Even if plaintiff could make out a prima facie case of wrongful termination, SGRE would still be entitled to summary judgment because SGRE has stated several legitimate business reasons for plaintiff's removal from the Lundgren site, and plaintiff has failed to show those reasons were pretextual.  SGRE argues that there is no genuine issue of material fact that it had legitimate business reasons to terminate plaintiff.  (Doc. 35, at 11-18).  Although SGRE did not articulate its argument under the *McDonnell Douglas* framework, its argument is the same as the second step in the burden-shifting analysis.  As set forth above, SGRE had many non-retaliatory reasons for removing plaintiff from the Lundgren site: Freund and Simmons' belief that plaintiff would not be able to pass MEC's background check to get a security badge, and thus any investment in his training would be wasted; plaintiff lying about his whereabout on March 1, 2017; plaintiff facing jail time; and plaintiff's general attitude and performance at the Lundgren site.  The burden, therefore, shifts back to plaintiff to show that SGRE's proffered reasons for his removal were pretextual.

"The burden of proof to establish pretext is higher than that required to establish a prima facie case." *Warmbold v. MINACT, Inc.*, Civil No. 16-554 (DWF/KMM), 2017 WL 4838752, at *8 (D. Minn. Oct. 24, 2017) (citing *Buytendorp v. Extendicare Health Servs., Inc.*, 498 F.3d 826, 835-36 (8th Cir. 2007)).  To establish pretext, plaintiff must present evidence that both discredits SGRE's asserted reasons for his removal and supports a reasonable inference that the real reason for plaintiff's removal was retaliation. *See Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 918 (8th Cir. 2007).

When an employer asserts that it terminated an employee based on the employee's misconduct, the focus of the court's inquiry is not whether the misconduct actually occurred.  Instead, the court must determine whether the employer believed that the

employee committed the misconduct alleged. *Cronquist v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001) (citing *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 972 n.2 (8th Cir. 1994)). In assessing whether an employer's reasons were pretextual, the Court does not "sit as [a] super-personnel department[ ] to second-guess the business decisions of employers." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 837 (8th Cir. 2002) (citation omitted). Employers can make "hasty business decisions, so long as they do not discriminate unlawfully." *Pulczinski*, 691 F.3d at 1005.

Here, plaintiff has not offered evidence discrediting any of the reasons SGRE proffered for removing him from the Lundgren site. Plaintiff argues that SGRE's claim that he would not pass the MEC background check must have been pretext because (1) MEC's policy was not in effect yet, (2) Freund did not consult with MEC to see if plaintiff's background would disqualify him from passing a background check, and (3) there has been an unbadged technician at the Lundgren site since the more stringent background checks went into place. It is possible that Freund made a hasty decision in removing plaintiff before the guidelines went into effect, but there is no evidence to contradict Freund's belief that plaintiff would not pass the MEC background check. It is plaintiff's burden to show that SGRE's reasons were pretext, and plaintiff has offered no testimony from anyone at MEC that he would have passed the new background check and received a badge. Also, Freund's desire to avoid having more unbadged technicians who would need escorts to access secured areas is precisely the kind of business decision the Court is not in the position to second-guess.

The fact that Freund and Simmons offered multiple justifications for removing plaintiff is also not evidence of pretext. Further explanation of the reasons for an adverse employment action is not a shifting explanation for the decision. *See Pulczinski*, 691 F.3d at 1004-05. This is particularly true when the differing explanations are related to the same event. *See id.* at 1005 (noting that the employer's explanations did not

substantially change when the employer terminated the employee for attempting to slow work on a day of forced overtime and for allegedly falsifying FMLA paperwork to justify the plaintiff's absence on the same day of forced overtime).  Here, Freund told both plaintiff and Stevens that the reason for plaintiff's removal from the Lundgren site was Freund's belief that plaintiff would not pass the MEC background check due, in part, to his pending charges for assault and false imprisonment.  In his March 1, 2017 email, Freund also indicated that the possibility of plaintiff serving jail time on those charges also justified his removal.  Freund testified that the final straw in his decision was his belief that plaintiff lied about where he was when he was supposedly at jury duty.  When plaintiff claimed he was at jury duty on March 1, 2017, he was actually attending an initial appearance on the same assault and false imprisonment charges.  Thus, the "shifting" explanations substantially relate to the same incident.

The other reason for plaintiff's removal, his poor performance and attitude, are merely additional explanation, but do not contradict the other stated reasons for SGRE removing plaintiff from the Lundgren site.  Plaintiff argues that Freund's performance concerns were pretextual because plaintiff was never told that his performance was unsatisfactory.  (Doc. 44-1, at 15).  It is true that "[a] history of positive performance evaluations can be powerful evidence of satisfactory performance." *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 728 (8th Cir. 2001).  The record, however, does not contain any positive performance evaluations from Freund before plaintiff's removal from the Lundgren site.  Plaintiff cites only to the lack of complaints to Stevens about his performance (Doc. 41-2, at 2), but the lack of complaints is not the same as a positive evaluation.  After Freund removed plaintiff from the Lungren site, he characterized plaintiff as "an OK technician," (Doc. 43-4, at 12), which is consistent with both the lack of complaints to Stevens' and Freund's desire, in light of the other concerns, to remove plaintiff.  Plaintiff has not offered any evidence to contradict any of Freund's or

Simmons' criticisms of his attitude and demeanor in the time leading up to plaintiff's removal from the Lundgren site. Thus, there is no evidence in the record to indicate that Freund's performance concerns were pretext for removing plaintiff due to his safety complaints.

Plaintiff likewise cannot meet his burden to show that Freund's proffered reasons were pretextual by referencing SGRE's treatment of other technicians. "An employee can show pretext by showing that the employer meted out more lenient treatment to similarly situated employees who . . . did not engage in protected activity. *Salitros v. Chrysler Corp.*, 306 F.3d 562, 570 (8th Cir. 2002); *see also Brown*, 178 F. Supp. 2d at 984-85 ("While Farmland's asserted discretionary policy is not inconsistent with its termination of Brown, its greater use of the policy to employees with workers' compensation claims precludes this court from granting summary judgment because Brown's evidence casts doubt on whether Farmland's proffered reasons were merely a pretext for retaliatory conduct."). As the Court found above, plaintiff has not established that any other technicians were similarly situated, and thus cannot establish that similarly situated technicians who did not make safety complaints were allowed to remain at the Lundgren site. Similarly, plaintiff has not presented evidence that other technicians who lodged safety complaints were removed from the Lundgren site. Thus, plaintiff cannot rely on Freund's treatment of other technicians to meet his burden to show that Freund's stated reasons for removing plaintiff from the Lundgren site were pretextual.

Even if plaintiff proffered evidence to show that Freund's stated reasons were pretextual, plaintiff must provide evidence to support a reasonable inference that the real reason for his removal was retaliation. *See Gilbert*, 495 F.3d at 918. For the same reasons set forth above, plaintiff has not proffered such evidence. Thus, even if plaintiff made out a prima facie case of wrongful termination, SGRE is still entitled to summary

judgment because there is not sufficient evidence in the record to show that SGRE's proffered reasons are pretextual, or that the reason for Freund's decisions was retaliatory.

## 2.  *Airway*

Airway argues that it is also entitled to summary judgment because there is no evidence that plaintiff's safety complaints were the determining factor in Airway's decision to terminate plaintiff's employment. Plaintiff argues that Airway is either jointly liable for SGRE's conduct or vicariously liable through agency principles or the doctrine of respondeat superior for Freund's conduct.

### a.  *Direct Causation*

There is no dispute that the first two elements are present for plaintiff's wrongful termination claim based on plaintiff's safety complaints to Airway. Plaintiff's safety complaints are protected conduct, and Airway terminated plaintiff's employment on March 10, 2017. Airway moved for summary judgment, in part, because there is no evidence that plaintiff's prior safety complaints were the determining factor in Airway's decision to terminate plaintiff. (Doc. 31-1, at 13-15). Plaintiff does not appear to argue that Stevens' decision to terminate plaintiff's employment was caused by his prior safety complaints. (*See* Doc. 41-1, at 3-4).

It is not the Court's duty to search for the "needle in the haystack" to support plaintiff's claim, *Anderson v. Bristol, Inc.*, 936 F. Supp. 2d 1039, 1046 (S.D. Iowa 2013) (citation omitted), nor is it the Court's role to construct plaintiff's argument for him, *Pharm. Care Mgmt. Ass'n v. Tufte*, 297 F. Supp. 3d 964, 986 (D.N.D. 2017). By not disputing Airway's argument that Airway is not directly liable, plaintiff has waived any such argument. *See, e.g.*, *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). Thus, as a matter of law, the Court finds there is no direct causal connection between plaintiff's complaints and his termination by Airway.

Even if plaintiff argued that his safety complaints were the determinative factor in Airway's decision, the record, viewed in the light most favorable to plaintiff, could not support such an argument. There is no dispute that Stevens was the decision-maker in plaintiff's termination from Airway, and that Stevens was only aware of plaintiff's August 12 and September 1, 2016 complaints. (Doc. 31-2, at 5). Plaintiff denied Airway's statement of fact (Doc. 41-1, at 9) but failed to cite any evidence in support of his denial, and thus the Court deems Airway's statement of fact admitted. *See* LR 56(b). The six-month gap between plaintiff's complaints to Stevens and his termination is too long to draw any causal connection. *See Tyler*, 628 F.3d at 986 ("The inference [of retaliation] vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." (internal citation omitted)); *Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008) ("The temporal connection here, six months, is not close enough to raise an inference of causation.").

There is no dispute that plaintiff made complaints to Jenson in early February (Doc. 31-2, at 5) but those complaints were not relayed to Stevens before his decision to terminate plaintiff's employment. (Doc. 36-1, at 31, 39-40). Without evidence that Stevens was aware of the February 2017 complaints, those complaints could not have been the determining factor in Stevens' decision. *See Schoonover*, 492 F. Supp. 2d at 1157.

Also, there is no evidence from which a jury could infer that Airway's decision to accept SGRE's request to remove plaintiff from the Lundgren site was the result of retaliatory motives. Freund told Stevens that the reason for SGRE's request was because SGRE did not believe plaintiff would pass MEC's new background check requirements. (Doc. 36-1, at 53). Stevens ordered his own background check which confirmed that plaintiff had a criminal history and pending criminal charges. (Doc. 30-7, at 106-19). Stevens asked Freund if plaintiff could be assigned to other SGRE sites not owned by

MEC. (Doc. 36-1, at 54). Stevens attempted to find a position for plaintiff at non-MEC sites operated by SGRE as well as sites operated by other customers. (Doc. 30-6, at 90-91). Stevens told plaintiff over the phone and via email that he was being terminated because after his removal from the Lundgren site there was no other work available. (Doc. 36-1, at 47, 58). There is nothing in the record to dispute that Stevens' stated non-retaliatory reason was the reason for plaintiff's termination.[12]

### b. *Indirect Liability*

In the absence of any evidence that Airway's decision to terminate plaintiff was caused by plaintiff's safety complaints, plaintiff argues that Airway is liable for SGRE's conduct. As the Court found above, there is no genuine issue of material fact to dispute that plaintiff's safety complaints were not the determinative factor in SGRE's decision to remove plaintiff from the Lundgren site. Thus, Airway cannot be held jointly or vicariously liable for SGRE's conduct because SGRE is not liable. Even if plaintiff's claim against SGRE did not fail as a matter of law, plaintiff's indirect liability claims against Airway would still fail.

Plaintiff's argument on the joint employer and borrowed servant doctrines is unclear, but the Court understands it to be two general arguments. First, plaintiff argues that SGRE and Airway jointly employed plaintiff, and thus Airway is liable for SGRE's wrongful conduct toward plaintiff. Second, plaintiff argues that Freund was an employee or agent of Airway because he was given supervisory control over plaintiff, and thus Airway is vicariously liable for Freund's conduct under the doctrine of respondeat superior. For the following reasons, both arguments fail as a matter of law.

---

[12] Even if plaintiff could establish a prima facie case against Airway, plaintiff's claim would fail under the burden-shifting analysis. Airway has established that it had a legitimate business reason for terminating plaintiff; it had no work for him to do. Plaintiff has presented no evidence to discredit Airway's stated reason for his termination.

### i.    *Joint Liability*

There is no dispute that plaintiff was an employee of Airway.  The Court will assume for purposes of this motion that SGRE was also an employer of plaintiff.  *See Greenbriar Grp., L.L.C. v. Haines*, 854 N.W.2d 46, 55 (Iowa Ct. App. 2014), *as amended* (Aug. 1, 2014) ("Generally, the right of control is the principal test for determining whether an employee-employer relationship exists."); *see also* (Docs. 43-5, at 18; 43-6, at 3) (explaining SGRE's control over Airway's employees).  Even if plaintiff was a joint employee of both SGRE and Airway, that relationship does not make Airway liable for SGRE's conduct.  *See Torres-Negron v. Merck & Co.*, 488 F.3d 34, 41 n.6 (1st Cir. 2007) ("[J]oint-employer liability does not by itself implicate vicarious liability. . . . [A] finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their *own* actions, not for each other's actions . . . ."); *see also Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228-29 (5th Cir. 2015); *Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 811-12 (7th Cir. 2014).

The court in *Whitaker v. Milwaukee County* noted that, according to the EEOC's guidelines, a temporary employment agency may be liable for its client's discrimination under the following circumstances:

> The [temporary employment agency] is liable *if it participates* in the client's discrimination.  For example, if the firm honors its client's request to remove a worker from a job assignment for a discriminatory reason and replace him or her with an individual outside the worker's protected class, the firm is liable for the discriminatory discharge.  The firm also is liable if it *knew or should have known about the client's discrimination and failed to undertake prompt corrective measures within its control*.

772 F.3d at 812 (quoting EEOC, No. 915.002, ENFORCEMENT GUIDANCE: APPLICATION OF EEO LAWS TO CONTINGENT WORKERS PLACED BY TEMPORARY EMPLOYMENT AGENCIES AND OTHER STAFFING FIRMS, at 2260 (1997)).

Plaintiff cites no case law to establish that Airway can be held jointly liable for SGRE's tortious conduct solely because Airway and SGRE were plaintiff's joint employers. The Court is persuaded by the reasoning in *Torres-Negron v. Merck & Co.* and *Whitaker* that the existence of a joint employer relationship does not, standing alone, implicate joint liability.

There are also no facts in the record to support a finding that, even if SGRE retaliated against plaintiff, Airway knew or should have known about SGRE's retaliatory intent. Freund advised Stevens that he wanted to remove plaintiff from the Lundgren site because Freund believed plaintiff would not pass MEC's background check. Stevens ordered his own background check, which confirmed that plaintiff had a significant criminal history, including charges pending at that time. Stevens had a limited knowledge of MEC's background standards. There is no evidence in the record to indicate that Stevens had any reason to question Freund's understanding of MEC's background requirements, particularly because SGRE, not Airway, had the contractual agreement with MEC. Thus, even if SGRE wrongfully terminated plaintiff, Airway cannot be held liable.

### ii.    *Vicarious Liability*

Plaintiff's second argument is that Airway is liable for Freund's conduct because Freund was an employee or agent of Airway. Plaintiff's agency argument is consistent with federal court's treatment of joint employers' liability to the joint employee. *See Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359-63 (11th Cir. 1994) (finding that two entities were joint employers of the plaintiff but looking to agency principles to determine the extent of one employer's liability for the other employer's Title VII violations); *see also Torres-Negron*, 488 F.3d at 41 n.6; *Whitaker*, 772 F.3d at 811-12. Plaintiff argues "[s]ince control for the day to day management of [plaintiff] was delegated by Airway[ ] to SGRE pursuant to their agreement, and since Airway[ ] relied

upon the recommendations of Freund . . . Freund was acting as a de facto agent or supervisor for Airway[ ]." (Doc. 41-1, at 5). Whether plaintiff argues that Freund was an agent or an employee of Airway, plaintiff's argument fails as a matter of law.

To establish a principle-agent relationship, there must be "(1) [a] manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to the former's control and, (2) consent by the latter to so act." *Peak v. Adams*, 799 N.W.2d 535, 546 n.2 (Iowa 2011) (quoting *Pillsbury Co. v. Ward*, 250 N.W.2d 35, 38 (Iowa 1977)); *see also* RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."). There is no evidence in the record that Freund's actions were, in any way, subject to Airway's control. To the contrary, the Master Services Agreement provides SGRE with the sole discretion to control Airway's employees' work, terminate Airway's employees for cause, and to remove any personnel that SGRE determined were impeding work on the site. (Docs. 43-5, at 17-18; 43-6, at 1-3). Because Airway did not have control over Freund, as a matter of law Freund was not Airway's agent. Thus, Airway cannot be held liable for Freund's conduct under agency principles.

Airway likewise cannot be held liable for Freund's actions under respondeat superior. "A claim of vicarious liability under the doctrine of respondeat superior rests on two elements: proof of an employer/employee relationship, and proof that the injury occurred within the scope of that employment." *Biddle v. Sartori Mem'l Hosp.*, 518 N.W.2d 795, 797 (Iowa 1994). Courts look at several factors to determine the existence of an employer-employee relationship, including:

(1) the right of selection, or to employ at will;

(2) responsibility for the payment of wages by the employer;

(3) the right to discharge or terminate the relationship;

(4) the right to control the work; and

(5) whether the party sought to be held as the employer is the responsible authority in charge of the work or for whose benefit the work is performed.

*Greenbriar Grp.*, 854 N.W.2d at 54 (quoting *Gabrielson v. State*, 342 N.W.2d 867, 870 (Iowa 1984)). Although no one factor is determinative, "the right of control is the principal test for determining whether an employee-employer relationship exists." *Id.* at 55 (citation omitted). "Ordinarily, the question of whether an employment relationship exists is one of fact that should be decided by the trier of fact," but the court may determine the absence of an employment relationship when there are "not enough facts for [a] jury to decide this issue." *Heinz v. Heinz*, 653 N.W.2d 334, 344 (Iowa 2002).

There is no evidence in the record to support a finding that Freund was an employee of Airway. Airway had no ability to select which SGRE employee would oversee its employees, nor did it have any authority under the agreement to terminate Freund. There is no evidence that Airway paid Freund's salary. Most importantly, as the Court found above, Airway had no right to control Freund's work. Similarly, Freund's work was performed for SGRE's benefit, not Airway's. Thus, none of the factors weigh in favor of Freund being Airway's employee. The Court finds, as a matter of law, that Airway did not employ Freund. In the absence of an employer-employee relationship, plaintiff cannot establish the first element of a respondeat superior claim.

Thus, Airway's motion for summary judgment is **granted** on plaintiff's wrongful termination claim for reporting safety concerns.

### C.    *Punitive Damages*

This Court has held that punitive damages are derived from the underlying cause of action, and thus "punitive damages can only be awarded when the plaintiff prevails on an underlying cause of action." *Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*,

922 F. Supp. 2d 780, 797 (N.D. Iowa 2013). The Court granted summary judgment on plaintiff's wrongful termination claims against both defendants. Without any underlying cause of action, plaintiff's punitive damage claim fails as a matter of law. Therefore, defendants' motions for summary judgment are also **granted** as to plaintiff's punitive damage claim.

## VI. CONCLUSION

For these reasons, defendants' motions for summary judgment (Docs. 30 & 31) are **granted**. The Clerk of Court is **directed to enter judgment in favor of defendants**.

**IT IS SO ORDERED** this 27th day of January, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa